UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YOLANDA VIVAS,

Plaintiff,

v. CASE No. 8:13-CV-1181-T-TGW

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

Defendant.

---

# ORDER

The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[*] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any reversible error, the decision will be affirmed.

## I.

The plaintiff, who was fifty-one years old at the time of the administrative hearing and who has a high school education, has worked as a court clerk and an adult daycare aide (Tr. 44, 176, 177). She filed claims

---

[*]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

for Social Security disability benefits and supplemental security income payments, alleging that she became disabled on February 26, 2010 (Tr. 110), due to fibromyalgia, osteoarthritis, depression, fatigue, migraine headaches, and pain in her legs (Tr. 175). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "status-post C4-5 anterior cervical discectomy and fusion (ACDF), secondary to herniated disc myelopathy; degenerative disc disease (DDD) of the lumbar area of the spine; asthma/chronic obstructive pulmonary disease (COPD); and obesity" (Tr. 25). He concluded that, with those impairments (Tr. 26-27):

> the claimant retains the residual functional capacity for a wide range of light work. She can lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand and/or walk six hours in an eight-hour workday. She has no limitations in her ability to push/pull with arm or leg controls. She can occasionally climb stairs/ramps, ladders, balance, stoop, kneel, crouch and crawl. She has no manipulative, visual, communicative, postural or environmental limitations. She can hear, understand, remember, and carryout simple, routine and/or complex work instructions, and can interact

appropriately with the general public, co-workers, and supervisors.

The law judge determined that, even with these restrictions, the plaintiff was capable of performing past work as a court clerk (Tr. 33). Accordingly, the law judge ruled that the plaintiff was not disabled (Tr. 34). The Appeals Council let the decision of the law judge stand as the final decision of the defendant.

II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The Act provides further that a claimant is not disabled if

she is capable of performing her previous work. 42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff attacks the law judge's decision on five grounds. None warrants reversal.

The plaintiff contends first that "[t]he Commissioner failed to state the weight he assigned the opinion evidence" (Doc. 22, p. 5). The plaintiff only specifies an opinion from Dr. Ronald Kline, a non-examining reviewing physician, as an opinion that the law judge failed to state the weight assigned. However, while the law judge did not expressly say what weight he was giving Dr. Kline's opinion, in fact the law judge's findings on

each of the various limitations were the same as Dr. Kline's opinions (compare Tr. 26-27 with Tr. 403-06). Consequently, it is obvious that the law judge fully accepted Dr. Kline's opinions. Therefore, the contention that the law judge erred because he did not state the weight he gave Dr. Kline's opinion is frivolous.

The plaintiff's second contention is that "[t]he Commissioner failed to consider all of plaintiff's severe impairments in assessing her [residual functional capacity]" (Doc. 22, p. 7). The plaintiff argues that, because the law judge found that the plaintiff had severe impairments of asthma/COPD, the law judge should have imposed environmental limitations such as avoidance of fumes, dust, smoke, and gasses (id., p. 8).

The law judge, however, expressly found that there were no environmental limitations (Tr. 27). This finding is supported by the opinion of Dr. Kline, who assessed no environmental limitations (Tr. 406). Moreover, no doctor had stated any environmental limitations for the plaintiff. Under these circumstances, the law judge did not err because he did not state any environmental limitations in his residual functional capacity determination.

Furthermore, there is not necessarily an inconsistency in the law judge's findings that the plaintiff had a severe impairment of asthma/COPD and no environmental limitations because he concluded that the impairment was severe in that it limited her to light work with only occasional postural activities. Also, if the law judge in fact erred, the error may have been in finding that the asthma/COPD was a severe impairment since there was no medical opinion supporting environmental limitations. In this respect, it is noted that the law judge said that he "has given the claimant every benefit of the doubt" (Tr. 33).

In all events, even if the law judge erred in finding no environmental limitations, that error was harmless. The law judge found that the plaintiff could return to past work as a court clerk and he consulted the Dictionary of Occupational Titles (DOT) in doing so (Tr. 33). That resource indicates that environmental hazards are not present on the job of court clerk. DICOT 243.362-010, 1991 WL 672263 (G.P.O.). Of course, that is exactly what one would expect in an office-type job like that.

The plaintiff's third contention is that "[t]he Commissioner failed to consider all the treating source evidence" (Doc. 22, p. 9). The plaintiff, at

the outset of this contention, provides three pages stating principles concerning opinions from treating physicians (id., pp. 9-11). Those principles, however, are inapposite here because there are no opinions from treating physicians. The plaintiff, as a result, is left to rely upon notes from two visits the plaintiff made to Dr. Yamilet Neninger, a pain management doctor (see id., p. 11).

Dr. Neninger's notes of August 29, 2011, and September 15, 2011, state the plaintiff's complaints and a decreased range of motion in the lumbar and cervical spine (Tr. 558, 560). The plaintiff complains that the law judge did not discuss these notes.

This contention is somewhat disingenuous. The notes had not been produced by the time of the administrative hearing, but the plaintiff's lawyer told the law judge that the record was sufficient to make a decision (Tr. 43). It seems hypocritical for the plaintiff's lawyer to assert that the law judge failed to discuss records that the lawyer thought were unnecessary.

Furthermore, the law judge said that, if the records were submitted, he would consider them (id.). There is no reason to think the law judge did not do as he said he would.

In any event, there is nothing in Dr. Neninger's notes that add anything significant. The plaintiff acknowledges that her testimony was consistent with what she told Dr. Neninger (Doc. 22, p. 12). Also, in an examination on August 31, 2011, the plaintiff's treating neurologist found normal range of motion (Tr. 511). Dr. Neninger did administer two epidural steroid injections upon recommendation by her neurosurgeon who thought that she would probably benefit from them (Tr. 518). Notably, the plaintiff had C4-C5 anterior cervical discectomy and fusion on August 1, 2011, and, by the time she saw Dr. Neninger, she was reporting "quite a bit of improvement following surgery" (Tr. 509).

Under these circumstances, Dr. Neninger's two notes fall within the principle that "there is no requirement that the ALJ specifically refer to every piece of evidence in his decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). Here, the law judge evaluated the medical evidence in detail and considered the plaintiff's medical condition as a whole. See id. Thus, the law judge found that the plaintiff had severe impairments of "status-post C4-5 anterior cervical discectomy and fusion (ACDF), secondary to herniated disc myelopathy [and] degenerative disc disease of the lumbar area

of the spine" (Tr. 25). As a result, he restricted the plaintiff to light work with only occasional postural activities (Tr. 26-27). There is nothing in Dr. Neninger's notes that suggests greater limitations.

Furthermore, since the law judge found that the plaintiff could return to past work as a court clerk, which involves just sedentary work, the plaintiff, in order to demonstrate reversible error, would need to show that the plaintiff was restricted to less than sedentary work. There is clearly nothing in Dr. Neninger's notes that suggests such drastic limitations.

For these reasons, the plaintiff's challenge to the law judge's failure to discuss Dr. Neninger's notes does not warrant reversal.

The plaintiff's fourth issue is that "[t]he Commissioner erred in finding plaintiff could return to past relevant work as a court clerk" (Doc. 22, p. 12). This contention is baseless.

The plaintiff reported that she worked as a court clerk from September 2000 to February 2010 (Tr. 184). Intuitively, there is nothing in the plaintiff's residual functional capacity that would preclude the plaintiff from working as a court clerk. The plaintiff, however, argues that the law judge erred because he did not ask the plaintiff about her duties as a court

clerk (Doc. 22, p. 14). This contention overlooks that it is the plaintiff's burden to prove her inability to perform her past relevant work. Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987). Thus, if there was an error in not asking the plaintiff about her duties as a court clerk, it was committed by the plaintiff's lawyer, and not the law judge.

Regardless, the law judge looked to the DOT to determine whether the plaintiff, with her residual functional capacity, could perform work as a court clerk. The plaintiff does not even acknowledge the law judge's reliance on that source, much less attempt to show that the reliance was improper or inadequate.

The plaintiff argues in particular that the law judge failed to ask about the need to engage in postural activities (Doc. 22, p. 14), which the plaintiff can perform only occasionally. However, as indicated, it was the plaintiff's burden to develop evidence showing that the plaintiff could not perform the job of court clerk because the job required tasks that the plaintiff could not carry out. In all events, the DOT indicates that postural activities are not present in the job of court clerk. DICOT 243.362-010, 1991 WL

672263 (G.P.O.). The law judge therefore reasonably found that the plaintiff could perform the job of court clerk.

The plaintiff's final argument is that "[t]he Commissioner failed to apply the three-part pain test to plaintiff's complaints of pain" (Doc. 22, p. 15). This contention also lacks merit.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable

basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and he referred to the pertinent regulations and Social Security rulings (Tr. 27). He even cited Landry v. Heckler (id.). In fact, near the end of his decision, he iterated the pain standard and this time cited Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (Tr. 33). This demonstrates that the law judge applied the proper standards. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

Moreover, the law judge evaluated the plaintiff's subjective complaints in detail. That assessment is reasonable and supported by substantial evidence.

The plaintiff asserts that the law judge did not discuss or apply the three-part pain test as it relates to objective testing (Doc. 22, p. 17). That assertion is incorrect. Thus, the law judge stated (Tr. 28) (emphasis in original):

> The severity of the claimant's allegations of pain and limitation is not supported by the objective

> diagnostic and/or laboratory findings of record. For example, bone density study of June 20, 2008, was normal and revealed improvement in the bony mineralization of the lumbar spine. Bilateral x-rays of the hips identified mild joint space narrowing, otherwise unremarkable. MRI of the pelvis showed no definitive evidence of vascular necrosis or other significant abnormality in either hip. (Exhibit 6F) MRI of July 22, 2010, of the brain was normal. (Exhibit 7F) Despite complaints of left leg pain and swelling, left lower extremity venous Doppler ultrasound revealed no evidence of deep venous thrombosis. Prior to surgery, diagnostic studies identified multilevel disc disease and spondylosis, similar to earlier studies and EMG/nerve conduction study identified involvement of the distal left peroneal nerve. Lumbar MRI identified a left pre-foraminal disc protrusion at L3-4, which abutted but **did not compress** the exiting nerve root or never [sic] root ganglion. There was mild degenerative change at other lumbar levels but no additional disc herniation, canal stenosis, or foraminal stenosis. (Exhibit 16F)

The law judge made a number of additional comments bearing on the credibility of the plaintiff's subjective complaints throughout the decision in connection with his discussion of the medical evidence.

The law judge also said (Tr. 31):

> Further, it is noted that daily activities are not as limited as alleged. For example, the claimant frequently states that she feels pain upon any

> activity as she is in constant pain (Exhibit 9E); yet, when reviewing Exhibit 12F, it is noted that the claimant has back and neck pain because she helps her mother lift her bedridden father. It is reasonable to conclude that if the claimant's impairments are as severe as alleged and the constant pain she complains about, **attempting such an endeavor** is impossible. (Emphasis Added) In addition, the claimant applied for and received unemployment compensation. Therefore, it is reasonable to conclude that she represented herself as an individual willing and able to work should suitable work become available. These actions are certainly contradictive to those of an individual that is truly disabled.

The plaintiff asserts, additionally, that the law judge did not discuss Dr. Neninger's records in applying the pain standard. As previously indicated, those notes add little, if anything, to the medical evidence in this case. The law judge's credibility determination was not deficient because he did not discuss the notes of those two visits in the context of assessing the plaintiff's credibility.

The plaintiff argues that the law judge erred because he did not apply the second prong of the pain standard, which is whether there is "objective medical evidence that confirms the severity of the alleged pain arising from that condition" (see Doc. 22, pp. 17-18).

I rejected this same contention at length in Rychel v. Astrue, Case No. 8:09-CV-926-T-TGW (Doc. 20, pp. 8-15), 2010 WL 3119376 (M.D. Fla.). In the first place, the factor is not reflected in either the Social Security Act or the regulations. 2010 WL 3119376 at *4. The legislative history shows that "not only did the element of objective medical evidence confirming the severity of pain not become law, it was not even proposed to become law." Id. Furthermore, the factor relates to the possibility of an objective medical test being developed that confirms the severity of pain. Id. at *5. To my knowledge, no such test has been developed, and there certainly was none in this case. Accordingly, the law judge did not err because he did not address the element of objective medical evidence confirming the severity of the pain.

The plaintiff argues further that the law judge did not consider the element of the pain standard regarding whether "the objectively determined medical conditions are of such a severity ... that it can reasonably be expected to cause Plaintiff's alleged level of pain" (Doc. 22, pp. 17-18). This contention is frivolous because the law judge expressly made such a finding. Thus, the law judge stated (Tr. 27-28):

> After careful consideration of the evidence, the undersigned finds that the claimant's medically

> determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

For these reasons, the plaintiff's challenge to the law judge's credibility determination is unavailing.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 15th day of September, 2014.

Thomas G. Wilson

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE